**SIGNED THIS: May 26, 2016**

_____
**Mary P. Gorman**
**United States Chief Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | Case No. 12-72022 |
| THR & ASSOCIATES, INC., | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| JEFFREY D. RICHARDSON, | ) | |
| Chapter 7 Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 14-07008 |
| | ) | |
| TODD GREEN; | ) | |
| PANTHER 4700, LLC; | ) | |
| UNITED COMMUNITY BANK; | ) | |
| JACOB PARSONS; and | ) | |
| UNCLE BUCK'S TRADING POST, | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |

–1–

# O P I N I O N

Two motions to dismiss the Trustee's First Amended Complaint have been filed by Defendants, Todd Green and Panther 4700, LLC, and those motions have been joined by Defendant, United Community Bank. For the reasons set forth herein, both motions will be denied.

## I. Factual and Procedural Background

THR & Associates, Inc. ("THR") filed its voluntary petition under Chapter 7 on September 10, 2012. THR was in the business of buying and reselling gold, other precious metals, coins, collectibles, art, and other miscellaneous property. THR operated on a national scale and did business using at least twenty-six different assumed names. Jeffrey A. Parsons was the sole shareholder and president of THR.[1] Jeffrey D. Richardson ("Trustee") was appointed and continues to serve as the case trustee.

On March 5, 2014, the Trustee filed this adversary proceeding against Todd Green, Panther 4700, LLC ("Panther"), United Community Bank ("UCB"), Jacob Parsons, and Uncle Buck's Trading Post, LLC ("Uncle Buck's"). In his complaint, the Trustee sought to avoid and recover alleged fraudulent conveyances made by THR to lease a residence and purchase a boat for Jeffrey Parsons' personal use.

The Trustee alleged that, in October 2011, Todd Green formed Panther for the purpose of purchasing a residence in Springfield, Illinois, with the intent that

---

[1] Jeffrey Parsons also filed an individual voluntary petition under Chapter 7 on September 10, 2012, as case #12-72023.

the residence would be leased or sold to Jeffrey Parsons for a profit. Panther's purchase of the residence was financed through a mortgage obtained from UCB. In November 2011, Jeffrey Parsons, individually, executed a lease with an option to purchase with Panther for the residence. The Trustee alleged that the lease and the parties' agreement required Jeffrey Parsons to pay a one-time $100,000 security deposit to Panther, a one-time non-refundable $100,000 service fee to Panther or Todd Green payable in silver coins, and a $17,500 bonus payment to Panther or Todd Green also payable in silver coins. The lease required monthly payments to Todd Green of $7500 for rent, and the parties were alleged to have also agreed to an additional monthly payment of $1700 for a tax and insurance escrow.

According to the Trustee, on November 1, 2011, THR issued a corporate check to Panther for $100,000 and transferred $117,500 in silver coins to Panther or Green to fulfill Parsons' obligations. The Trustee further alleged that, from November 2011 through June 2012, THR issued corporate checks each month to Panther for Jeffrey Parsons' rent and escrow payments. In July 2012, THR is alleged to have purchased cashier's checks to make the payments and, in August, THR is alleged to have paid Jeffrey Parsons' monthly obligations in cash.

The Trustee alleged that, beginning on September 18, 2012—just days after THR and Jeffrey Parsons filed their bankruptcy cases—and continuing through September 2013, the monthly rent and escrow payments were made by Jacob Parsons (Jeffrey Parsons' son) or his business, Uncle Buck's, with assets belonging to THR. All monthly payments made either by THR, Jacob Parsons, or

–3–

Uncle Buck's were alleged to have been made to UCB for the benefit of Panther and Todd Green.

In addition to the residence transaction, the Trustee alleged that, sometime after April 1, 2012, Todd Green purchased a 2006 Hydra-Sports 3300 CC boat from a dealer in Florida. Jeffrey Parsons is alleged to have selected the boat and agreed to purchase it from Todd Green for $150,000 in silver. The Trustee claimed that THR transferred silver worth at least $150,000 to Todd Green to complete the boat purchase for Jeffrey Parsons.

Based on these factual allegations, the Trustee pled ten counts seeking to avoid and recover the alleged fraudulent conveyances. Each avoidance count recited that it was brought pursuant to §548(a)(1)(B) and alleged that THR had not received reasonably equivalent value for the alleged transfers of its assets. *See* 11 U.S.C. §548(a)(1)(B). Jacob Parsons and Uncle Buck's failed to answer the complaint and have been defaulted. Judgment was entered against each of them for $119,600 plus costs of suit.

Todd Green, Panther, and UCB (collectively "Defendants") all answered the complaint and raised affirmative defenses to the relief sought. Substantial discovery was conducted by the parties pursuant to an agreed schedule. Delay in discovery occurred, however, when Jeffrey Parsons appeared for a deposition but declined to answer any questions based on his Fifth Amendment privilege. Although the Trustee moved to compel the testimony, Jeffrey Parsons was granted several extensions of time to respond because he was trying to find counsel to represent him in the matter. After the briefing of the motion to compel was finally

completed, this Court ruled against the Trustee, and Jeffrey Parsons was not required to complete his deposition.

On November 16, 2015, the Trustee filed a motion for leave to file his amended complaint. At a subsequent hearing, the Defendants objected, complaining that they would be prejudiced by the late filing. The motion for leave was granted over the objections and without prejudice to the Defendants raising their objections in their answers or other motions.

The First Amended Complaint contains the identical factual allegations as the original complaint. New additions are counts II, IV, VI, and VIII, which allege actual fraud in both the residence and boat transactions pursuant to §548(a)(1)(A). *See* 11 U.S.C. §548(a)(1)(A). Todd Green and Panther filed a motion to dismiss counts II, IV, and VI, claiming that the counts do not set forth the alleged actual fraud with sufficient particularity, and that the new legal claims are so different from the original claims that they cannot relate back and, thus, are untimely. UCB joined the motion to dismiss by summarily raising the same arguments presumably, but not explicitly, with the intent that dismissal of count VIII directed at it would be included in the requested relief.

Todd Green and Panther also filed a motion to dismiss the First Amended Complaint in its entirety, claiming that the Trustee lacks standing to bring the action because any potential recovery will be encumbered by liens of the Internal Revenue Service ("IRS"), the Illinois Department of Revenue ("IDOR"), and the Illinois Department of Employment Security ("IDES"). The Defendants assert that there is no potential benefit to the estate from the Trustee's pursuit of the action

and, therefore, the action must be dismissed. UCB again summarily joined in the motion to dismiss.

The Trustee resists both motions to dismiss. The issues have been fully briefed and the matters are ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; 28 U.S.C. §157(a). The proceeding involves the avoidance and recovery of fraudulent conveyances and is therefore a core proceeding. 28 U.S.C. §157(b)(2)(H). The matter immediately before the Court requires a determination of the adequacy of the pending complaint and the order denying the motions to dismiss will not be a final order. *See Fruehauf Corp. v. Jartran, Inc. (In re Jartran, Inc.)*, 886 F.2d 859, 863-64 (7th Cir. 1989). Thus, the constraints of *Stern v. Marshall* are not implicated. *See Stern v. Marshall*, 564 U.S. 462 (2011). And in any event, the parties consented to the entry of final orders by this Court in their joint pre-trial statement filed July 2, 2014. *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1948 (2015).

## III. Legal Analysis

*A. Counts II, IV, VI, and VIII adequately state causes of action for actual fraud.*

The Defendants claim that the actual fraud counts of the First Amended Complaint should be dismissed for failure to state claims upon which relief can

be granted. Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012. In order to withstand a motion to dismiss, a complaint must allege enough facts to plausibly suggest a claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint must provide the defendants with fair notice of the claims being made against them and the grounds for the relief requested. *Id.* at 555. A plaintiff must plead sufficient facts to raise the claimed right to relief above the speculative level. *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). If a complaint includes only labels and conclusions or formulaic recitations of the elements of a cause of action, it is insufficient and may be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). An enhanced pleading standard applies when fraud is alleged; fraud must be pled with particularity. Fed. R. Civ. P. 9(b); Fed. R. Bankr. P. 7009.

The Defendants assert that the Trustee has failed "to allege with any specificity any facts or other supporting information which would establish the fraudulent nature" of the residence and boat transactions. But the Defendants' assertions are incorrect. The Trustee has pled in great detail the "who, what, when, where, and how" of the transactions and thus has more than satisfied the requirement of particularity. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011).

Although the facts of the allegedly fraudulent conduct must be pled with particularity, intent to defraud may be pled generally. Fed. R. Civ P. 9(b); Fed. R. Bankr. P. 7009. Thus, the Defendants' argument that the intent element of the alleged actual fraud was insufficiently pled is without merit. Further, the

Trustee did allege the existence of several traditional badges of fraud, including that THR was insolvent at the time of the transfers and that THR received no consideration for the transfers. Such allegations are sufficient to support the drawing of an inference of fraudulent intent and to avoid dismissal of the complaint. *See Cox v. Grube (In re Grube)*, 500 B.R. 764, 776-77 (Bankr. C.D. Ill. 2013); *Peterson v. Atradius Trade Credit Ins., Inc. (In re Lancelot Investors Fund, LP)*, 451 B.R. 833, 838-39 (Bankr. N.D. Ill. 2011).

The actual fraud counts of the First Amended Complaint allege significantly more than the bare elements of the statute. Counts II, IV, VI, and VIII state causes of action for actual fraud. The Defendants' motion to dismiss arguing otherwise will be denied.

### B. The allegations of the First Amended Complaint arise from the same transactions as the original complaint and thus relate back.

The Defendants also claim that counts II, IV, VI, and VIII of the First Amended Complaint should be dismissed as having been untimely filed. They correctly assert that fraudulent conveyance actions must be brought within two years after the filing of a voluntary petition. 11 U.S.C. §546(a). And because the First Amended Complaint was not filed until more than three years after the petition date, they claim that the newly added counts for actual fraud are time-barred. The Trustee counters that the amendments are based on the same facts and transactions originally pled and, therefore, relate back to the complaint and are timely filed. Fed. R. Civ. P. 15(c); Fed. R. Bankr. P. 7015.

The factual allegations of the First Amended Complaint are identical to the

allegations of the original complaint. The transactions that gave rise to the actual fraud counts—the lease of the residence and the purchase of the boat by Jeffrey Parsons—are exactly the same transactions that supported the constructive fraud counts. An amendment relates back to the "date of the original pleading" when the "amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading[.]" Fed. R. Civ. P. 15(c)(1)(B). The plain language of Rule 15(c) compels a finding that the claims made in the First Amended Complaint relate back to the original complaint and the First Amended Complaint should not be dismissed as untimely. *Id.*; *Grube*, 500 B.R. at 776.

Defendants spend little time in their motion to dismiss arguing that the allegations of the First Amended Complaint do not actually relate back. Rather, they assert that, even if the relation-back requirement is satisfied, they are prejudiced by the late amendment. They claim that significant additional discovery will now be required, and they ask the Court to assume that "memories have faded; people have moved on in their lives; evidence has been scattered." They note the Court's discretion to allow amendments "when justice so requires" and ask the Court to find that justice would not be served by the late amendment here. Fed. R. Civ. P. 15(a)(2).

The Defendants also rely on cases such as *Johnson v. Methodist Med. Ctr. of Ill.*, 10 F.3d 1300 (7th Cir. 1993), for the proposition that leave to amend can and should be denied when it appears that an opposing party will be prejudiced. *Johnson* did affirm the denial of a request to file an amended complaint and, in doing so, discussed at length the prejudice to the defendant that would have

occurred if leave had been granted. *Id.* at 1304. But the proposed amended complaint in *Johnson* was described as adding new actors, new actions, and distinct factual allegations from what had been previously pled. *Id. Johnson* is distinguishable from the case here where the factual allegations have not changed with the filing of the First Amended Complaint.

The bare assertions by the Defendants that they will be prejudiced are insufficient to justify dismissing the actual fraud counts. Their suggestion that evidence is lost or witnesses have forgotten key information is speculative at best. The Defendants list a number of new witnesses they now want to depose, but it is not clear what any of the witnesses has to offer or what the Defendants think they would have had to offer if they had been deposed earlier. Some are witnesses who have always been known to the parties such as Jacob Parsons, Jennifer Parsons (Jeffrey Parsons' ex-wife), and Sally Runyon, the THR bookkeeper. Others are unnamed such as the IRS agents who may have tried to collect from THR and representatives of other unknown creditors.

To find sufficient prejudice to dismiss the case, this Court would have to believe that all, or at least most, of these named and unnamed new witnesses were available and had relevant information to provide to the Defendants on September 10, 2014—the two-year deadline for filing the complaint—but by November 15, 2015—the date leave was sought to file the First Amended Complaint—they had become unavailable or forgotten what they knew. Nothing presented in the motion to dismiss supports finding in favor of the Defendants on these issues. The Defendants do not yet know what the witnesses ever knew or what they will

remember if deposed now. The allegations of prejudice are wholly speculative and insufficient to support dismissal. The Defendants have not established that justice requires the dismissal of the First Amended Complaint.

In denying dismissal of the First Amended Complaint, the Court is cognizant of the fact that the legal theories of constructive fraud and actual fraud bear limited resemblance to each other and are, in fact, "categorically different" from each other. *Grube*, 500 B.R. at 775. And the Defendants are understandably annoyed that the Trustee wants to change his legal theory, at least in part, after the case has been pending for over eighteen months. As the Defendants point out, trustees frequently plead both constructive and actual fraud when the facts might support either claim, thus signaling to defendants that discovery should be undertaken with both potential claims in mind. Here, the Trustee originally pled only constructive fraud, and the Defendants feel that they were unfairly lulled into complacency and misled about the full extent of discovery needed. But the Court finds no wrongdoing on the part of the Trustee, and nothing in the record supports the Defendants' allegation that he purposely held back in filing the actual fraud counts to gain some unfair advantage. The Trustee's discovery plan included taking a deposition of Jeffrey Parsons, and he was thwarted in that effort by Mr. Parsons' assertion of privilege. The delays associated with resolving the privilege issue are fairly chargeable to Jeffrey Parsons and to the Court but not to the Trustee who acted promptly to compel the testimony. The fact that so much time passed before the First Amended Complaint was filed is unfortunate but understandable given the circumstances of this difficult case.

Although the Defendants will likely disagree, it may be fortunate that the Trustee moved to amend his complaint before trial and, thereby, gave them the opportunity to contemplate his alternate legal theory and to complete additional discovery. If the case was tried without an amended complaint having been filed, but the evidence introduced supported a finding of actual rather than constructive fraud, the Trustee would not be precluded from arguing for such a result, and a post-trial amendment to the complaint could be allowed to effectuate that result. Fed. R. Civ. P. 15(b)(2); *Disch v. Rasmussen*, 417 F.3d 769, 776 (7th Cir. 2005) (affirming allowance of post-trial amendment changing cause of action from a complaint to determine dischargeability to an objection to discharge). Because of the nature of the factual allegations the Trustee is making, he will most likely be able to present a wide range of evidence regarding THR's business operations and the circumstances under which he claims assets of THR were transferred to Jeffrey Parsons, Jacob Parsons, Uncle Buck's, and the Defendants. Thus, a real possibility exists that, even without the amendment, whatever evidence the Trustee has of actual fraud, or from which actual fraud might be inferred, could be introduced at trial. The Defendants are best served by preparing for that circumstance now rather than post-trial.

Because the facts and the transactions set forth in the First Amended Complaint are identical to those pled in the original complaint, the First Amended Complaint relates back and is timely filed. The Defendants have not established that they are so prejudiced by the amendment that the interests of justice require dismissal. Their motion to dismiss based on the timeliness of the filing of the First

Amended Complaint will be denied.

### C. The Trustee has both constitutional and prudential standing to prosecute this adversary proceeding.

The Defendants moved to dismiss the First Amended Complaint in its entirety because they claim that the Trustee does not have standing to prosecute the fraudulent conveyance actions. They assert that the IRS, IDOR, and IDES had liens on the assets of THR transferred to the Defendants and have liens on all potential proceeds of the Trustee's actions. Therefore, they argue that there is no possible benefit to the estate and the unsecured creditors from the Trustee's continued prosecution of the case.

The doctrine of standing creates limitations on the power and authority of federal courts and requires courts to satisfy themselves that a plaintiff has a sufficient personal stake in the controversy presented to warrant the exercise of federal court jurisdiction. *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009), relying on *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975). Standing, in the constitutional sense, is an element of the case or controversy requirement of Article III of the Constitution. *Summers*, 555 U.S. at 493. To establish constitutional standing, a litigant must show: (1) that he has suffered an injury in fact; (2) that the injury is fairly traceable to the defendant's conduct; and (3) that the injury is likely to be redressed by a favorable court decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Article III standing is a jurisdictional prerequisite to reaching the merits of a suit. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009); *Smith v. Wisc. Dep't of*

*Agriculture, Trade and Consumer Protection*, 23 F.3d 1134, 1142 (7th Cir. 1994).

The doctrine of standing also creates prudential limitations not grounded in Article III but in "matters of judicial self-governance" designed to assure that courts only resolve disputes that are appropriate for judicial resolution. *Warth*, 422 U.S. at 500. A key tenet of prudential standing is that a party generally may not assert the rights of another person or entity. *Kyles v. J.K. Guardian Security Services, Inc.*, 222 F.3d 289, 294 (7th Cir. 2000). The prudential limitations on standing are waivable and not jurisdictional. *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 756-57 (7th Cir. 2008).

In arguing that the Trustee lacks standing to prosecute this action, the Defendants do not claim that he is without constitutional standing. A Chapter 7 trustee is authorized to bring actions to both avoid and recover transfers of property made by debtors with the intent to defraud or for inadequate consideration. 11 U.S.C. §§548(a)(1), 550(a). And when a bankruptcy case has been filed, only the Chapter 7 trustee may prosecute fraudulent conveyance actions. *See Whirlpool Corp. v. CIT Group/Business Credit, Inc.*, 258 F. Supp. 2d 1140, 1146 (D. Haw. 2003) (creditor's fraudulent conveyance action dismissed for lack of standing due to pending bankruptcy and trustee's action on behalf of all creditors).

The Defendants admit in their briefs that the general rule is that trustees have standing to bring the actions brought here. They suggest, however, that the Trustee lacks standing due to the "unusual" facts of this case, which they claim include the IRS, IDOR, and IDES having liens on all potential proceeds. Thus, the

Defendants argue that the Trustee does not have prudential standing because he is, for all practical purposes, asserting only the rights of other entities who will benefit from any recovery. They question whether, under the precise facts here, the Trustee's generally recognized statutory authority may be exercised.

The Defendants presented their motion to dismiss as raising a question of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). But when prudential standing or statutory standing under the facts of a particular case is questioned, the issue to be decided is whether a claim has been stated upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011); *In re Fluidmaster, Inc.*, 2016 WL 406327, at *6 n.2 (N.D. Ill. Feb. 3, 2016). When considering a motion to dismiss under Rule 12(b)(6), a court must review the complaint in the light most favorable to the plaintiff, and well-pled facts must be accepted as true. *Williams v. Ramos*, 71 F.3d 1246, 1250 (7th Cir. 1995). Factual disputes are not resolved by motions to dismiss because a court's consideration is limited to the matters set forth in the pleadings. Under certain circumstances, however, judicial notice may be taken of documents contained in the public record, including the court's own docket. *Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998); *Muhammad v. Reed (In re Reed)*, 532 B.R. 82, 86 (Bankr. N.D. Ill. 2015). Here, the Defendants ask the Court to consider the claims filed by the IRS, IDOR, and IDES and the documents attached to those claims in deciding their motion to dismiss. As requested, the Court will consider the claims and documents but only for the limited purpose of explaining why it cannot find, as a matter of fact or law, that

-15-

the IRS, IDOR, and IDES are the only possible beneficiaries of the pending fraudulent conveyance actions.

The IRS filed its first claim on October 16, 2012, in the amount of $20,492,443.14. It claimed that $6,363,126.07 of the amount was secured but included no itemization of the property securing the claim. Attached to the claim was a printout stating that the IRS first filed a Notice of Tax Lien with the Illinois Secretary of State on April 17, 2012, for taxes assessed on March 26, 2012.[2] The tax lien was for principal, interest, and penalties in a total amount of $1,218,048.67. The IRS has amended its claim three times with the most recent amended claim having been filed on April 28, 2016. The latest amended claim shows the amount due as $13,036,705.15 with $6,080,411.50 of that amount being secured. The security for the claim is described as real estate, motor vehicle, and "[a]ll of the debtor(s) right, title and interest to property - 26 U.S.C. §6321."

The IDOR filed a claim on November 7, 2012, in the amount of $1,027,991.18. It asserts that $618,685.87 of the claim is secured but also provides no itemization of the property securing the claim. The IDOR claim has a document attached that states that the lien was filed in Sangamon Co., Illinois,

---

[2] The IRS also filed liens in several Illinois counties. The proper place of filing a federal tax lien is governed by state law. 26 U.S.C. §6323(f). Under Illinois law, when tangible or intangible personal property owned by a corporation with its executive office in Illinois is involved, notices of federal tax liens must be filed with the Secretary of State. 770 ILCS 110/2(c)(1). For purposes of analysis here, this Court considers the Secretary of State filing as the controlling filing. As explained elsewhere, no final determination of the validity, priority, or extent of the IRS liens can be made in this case. Nothing in this Opinion precludes the IRS or any other interested party from raising issues about the impact of the county filings in future litigation.

on May 7, 2012, and related to unpaid withholding taxes for the second, third, and fourth quarters of 2011. Those taxes were assessed on November 10, 2011, January 31, 2012, and March 14, 2012.

The IDES filed a claim on January 8, 2013, in the total amount of $731,486. It identifies $602,862.49 of that amount as being secured but provides no itemization of the property securing the claim. Attached to the claim is a printout showing that the IDES filed its first Notice of Tax Lien against THR on April 10, 2012, for contributions and interest due for the first and second quarters of 2011 in the amount of $251,209.49. No information is provided in the claim regarding where the lien was filed, and a copy of the lien was not attached.

In considering the claims, it is important to note that none of the creditors specifically assert a lien on the assets allegedly transferred from THR for the residence lease and boat purchase or on the potential proceeds of the fraudulent conveyance actions. Although the IRS's secured claim is in an amount large enough to arguably include such property, the amounts of the other two secured claims strongly suggest that neither the IDOR nor the IDES included the transferred assets or the claims for recovery in their collateral. The Trustee's total requested recovery in this action is $579,100. With both the IDOR and IDES claiming total collateral as of the date of the case filing of only approximately $600,000, it seems obvious that neither has included the transferred assets or potential proceeds in their claims. Nevertheless, further analysis is needed to determine whether, based on the three claims, a finding can be made that, as a matter of fact and law, all potential proceeds of the Trustee's action are fully

–17–

encumbered.

The Trustee claims that, by April 1, 2012, $263,500 in payments in cash or silver had been made on the residence lease using THR assets. He also claims that, sometime thereafter, another $150,000 in THR assets were used for the boat purchase. The IDES lien was filed on April 10, 2012, and would relate back to the date THR's contributions were due. 820 ILCS 405/2400. But it is unknown where the IDES lien was filed and in what state or county the boat transaction took place. It is also unknown when the $150,000 in silver used for the boat purchase was initially transferred from THR.

The IDOR lien filed May 7, 2012, relates back to the date the taxes covered by the lien were assessed. 35 ILCS 5/1101(a). But the first assessment date shown on the lien is November 10, 2011, after at least $217,500 had been transferred for the residence transaction. Likewise, the IRS lien relates back to the assessment date of the taxes. 26 U.S.C. §6321. But the earliest assessment date on the lien documents filed with the Secretary of State is March 26, 2012. By then, at least the $263,500 had been paid on the residence lease. And again it is not known whether the initial transfer of the silver for the boat purchase occurred before or after that date.

The Defendants' arguments assume that the liens relate back and cover all of the alleged transfers. But insufficient information is available for that finding to be made as a matter of fact or law. And equally important is the fact that none of the liens relate back in derogation of the rights of bona fide purchasers who acted without knowledge before the liens were filed. 26 U.S.C. §6323; 35 ILCS

5/1103(a); 820 ILCS 405/2401(A). Thus, the Defendants, who may well be "purchasers" under the relevant statutes, likely have defenses to the lien claims against the assets transferred to them before the liens were actually filed. This Court cannot find that the transferred funds were encumbered by liens when absolute defenses to those liens may exist.

An additional concern is whether there is any basis for the IRS, IDOR, or IDES to claim that their liens, if any, on the THR assets that were used for the payments to the Defendants continue to exist with respect to proceeds from the disposition of the property originally acquired. Generally, liens would only continue to exist on property distinctly traceable to the originally encumbered property. *United States v. Boardwalk Motor Sports, Ltd.*, 692 F.3d 378 (5th Cir. 2012). Whether there are any traceable proceeds is not known; details of the disposition of the residence and boat are unknown. But if no proceeds are traceable, then whatever lien rights that previously existed may no longer exist. In contrast, once a trustee avoids a transfer, he can seek recovery of the transferred assets or obtain a recovery of the value of the assets from a transferee. 11 U.S.C. §550(a). Thus, the Trustee's cause of action may allow him to recover the value of property no longer subject to the liens; such a recovery would benefit the estate and unsecured creditors.

The Defendants argue that their request for dismissal for lack of standing is supported by *Barber v. McCord Auto Supply, Inc. (In re Pearson Industries, Inc.)*, 178 B.R. 753 (Bankr. C.D. Ill. 1995). In *Pearson*, the court held that, although the trustee could avoid both pre-petition and post-petition transfers made by the

debtor to a supplier, the trustee could not recover the value of the transfers from the supplier because the assets transferred were fully encumbered. *Id.* at 767. Because recovery under §550(a) must be for "the benefit of the estate" but no benefit would be received by the estate from the trustee's proposed action, the trustee could not proceed. *Id. Pearson* is distinguishable from the dispute here, however, because in *Pearson*, the validity of the creditor's security interest in the proceeds sought to be recovered by the trustee was stipulated to by the parties. *Id.* at 754. Here, the issue of what liens, if any, attached to the THR assets that were transferred is the subject of substantial dispute.

The validity, priority, and extent of the liens of the IRS, IDOR, and IDES on the assets of THR that were allegedly transferred to Jeffrey Parsons, Jacob Parsons, Uncle Buck's, and the Defendants cannot be determined in this case or on the documents before the Court. The IRS, IDOR, and IDES are not parties here, and their rights cannot be fully determined in their absence.[3] All that the Court can find is that, based on the limited record before it, the liens that may have attached at the time of the alleged transfers do not appear to exceed the value of those transfers and, therefore, it cannot be determined as a matter of fact or law that all potential proceeds of the Trustee's actions are encumbered.

---

[3] An adversary proceeding is generally necessary to determine the validity, priority, and extent of liens. Fed. R. Bankr. P. 7001(2). Having said that, the Court is not inviting the parties to file such an action at this time. If the Trustee prevails against the Defendants and recovers property, and then one or more of the lien holders claims an interest in that property, an action could be brought by the Trustee to resolve any disputes about the liens. If the Trustee does not prevail, however, any dispute between the Defendants and the lien holders would be resolved elsewhere.

As an alternate theory to the argument that the IRS, IDOR, and IDES had liens on the assets of THR that were transferred as part of the residence and boat transactions, the Defendants assert that the liens also attached directly to the fraudulent conveyance causes of action. According to the Defendants, if the three entities have liens on the causes of action, then any recovery through the litigation would belong to the creditors, not the estate. In making this argument, however, the Defendants misconstrue the nature of the fraudulent conveyance causes of action.

Federal tax liens attach to "all property and rights to property, whether real or personal, belonging to" the person who is liable for the taxes due and against whom the lien is filed. 26 U.S.C. §6321. Likewise, Illinois law provides that liens filed by the IDOR and IDES attach to all property and rights to property of delinquent taxpayers. *See* 35 ILCS 5/1101(a); 820 ILCS 405/2400. Property of a taxpayer to which the liens might attach could certainly include causes of action held by the taxpayer against third parties. The question here, however, is whether the right to bring a fraudulent conveyance action is property of the person or entity that made the allegedly fraudulent transfer. If, as the Trustee urges, it is not, then there would be no basis to find that the liens filed against THR's property would have attached to the fraudulent conveyance causes of action brought by the Trustee.

Under Illinois law, transfers may be fraudulent as to the creditors of a transferor if the transfers are made with actual intent to hinder, delay, or defraud creditors or without receiving reasonably equivalent value. 740 ILCS 160/5(a).

-21-

Creditors of the transferor are authorized to obtain avoidance of the transfers, attachment of the transferred assets, and other relief. 740 ILCS 160/8. The statutory fraudulent conveyance cause of action is specifically identified as belonging to creditors. *Id.*

It appears that the IRS, IDOR, and IDES were creditors of THR when the transfers of THR assets for the residence and boat transactions were made in 2011 and 2012. Thus, any of these entities could have filed fraudulent conveyance actions to try to recover the transfers. But their authority to do so would have come from the statute and their status as creditors, not from their lien filings. Their lien filings on the assets of THR would not have given them a lien on a cause of action owned not by THR but by THR's creditors. Likewise, the fraudulent conveyance causes of action available to be prosecuted in a Chapter 7 case arise by statute for the benefit of creditors and do not come into the estate as property owned by the debtor. 11 U.S.C. §548(a). In considering the reach of a tax lien, it is clear that "[t]he plain meaning of the words 'belonging to' suggests that the lien attaches to property interests owned by the taxpayer, not property interests vulnerable to the taxpayer's judgment creditors. As every bankruptcy trustee knows, the latter is a potentially larger universe." *Thomson v. United States*, 66 F.3d 160, 161 (8th Cir. 1995).[4]

---

[4] The Defendants have argued that the liens attached to the fraudulent conveyance actions despite such actions not being property of THR. They rely on the old, unpublished case of *In re Southwest Equipment Rental*, #1-88-00033 (Bankr. E.D. Tenn. Oct. 12, 1993). But the holding of *Southwest Equipment*, which did in fact support the Defendants' position, has been criticized for not considering the true nature of the action at issue and whether such action was actually property of the debtor to which a lien would attach. *See Frank v. Michigan*

The IRS, IDOR, and IDES liens did not attach to the fraudulent conveyance actions that arose for the benefit of THR's creditors when the transfers were made. The liens create no special rights for these entities in any potential proceeds that might be recovered from the Trustee's actions. The Defendants' assertions that the liens of the IRS, IDOR, and IDES attached to the fraudulent conveyance causes of action is inaccurate and does not support their motions to dismiss for lack of standing. Their motions to dismiss will be denied.

## IV. Conclusion

The First Amended Complaint states causes of action for actual fraud, and the Trustee has standing to bring the actions. The allegations of the First Amended Complaint fully relate back to the allegations made in the original complaint. The Defendants have not established any prejudice in having to respond to the First Amended Complaint. For these reasons, the Defendants' motions to dismiss must be denied.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###

---

*ex rel. Michigan Unemployment Agency Dep't of Consumer & Industry Services*, 263 B.R. 538, 542 (E.D. Mich. 2000). And as the Trustee points out, the author of *Southwest Equipment* later admitted that the analysis was flawed for that very reason. *See In re Southeast R.R. Contractors, Inc.*, 235 B.R. 619, 622, n.1 (Bankr. E.D. Tenn. 1996). *Southwest Equipment* does not support a finding in favor of the Defendants on the issues before this Court.